UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID G. BENNER,

    Plaintiff,

v.

CORRECTIONAL MEDICAL
SERVICES, et al.,

    Defendants.
_____/

Hon. Gordon J. Quist

Case No. 1:08 CV 1110

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Correctional Medical Services, Inc., Raymond Gelabert, M.D., and Margaret Ouellette, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>. (Dkt. #17). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On September 18, 2007, inmate Dwight Ausborne assaulted Plaintiff by striking him in the head with a rock. (Dkt. #1 at ¶¶ 25-26; Dkt. #1, Exhibit 1). Plaintiff asserts that "Defendants knew prisoner Ausborne #376084 was a clinically diagnosed schizophrenic, and was put on several medications in an attempt to control his violent behavior, because prisoner Ausborne #376084 had numerous prior assault incidents and convictions on record, including the use of a weapon." (Dkt. #1 at ¶ 28). Prior to assaulting Plaintiff, Ausborne had, "on more than one occasion," stated that he "was going to kill

someone and his medications were not working." (Dkt. #1 at ¶ 28). These statements were "overheard by housing unit corrections officers" as well as other prisoners. (Dkt. #1 at ¶ 28). After Ausborne assaulted Plaintiff, Defendant Proctor told an investigator that "he is familiar with Ausborne" and "[h]e knows him to be crazy and would hit someone with a rock for no reason." (Dkt. #1 at ¶ 28; Dkt. #1, Exhibit 1).

Plaintiff initiated the present action on November 26, 2008, against Florence Crane Correctional Facility, Correctional Medical Services (CMS), and numerous individuals. Plaintiff asserts that Defendants failed to protect him from Ausborne, thereby violating his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #1 at ¶ 43). Plaintiff has sued the individual defendants in their official and personal capacities seeking declaratory and monetary relief. (Dkt. #1 at ¶¶ 8-22, 48). Defendants CMS, Gelabert, and Ouellette now move to dismiss Plaintiff's claims. As discussed below, the Court recommends that Plaintiff's claims against Defendant CMS be dismissed, but that his claims against Defendants Gelabert and Ouellette go forward.

## ANALYSIS

**I.        Defendant CMS**

CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights

"because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429. While Plaintiff alleges that Ausborne received medical treatment from CMS, Plaintiff has not alleged that his injuries resulted from any CMS policy, practice, or custom. Accordingly, the Court recommends that Plaintiff's claims against CMS be dismissed.

**II.         Defendants Gelabert and Ouellette**

Defendants Gelabert and Ouellette assert that Plaintiff's claims against them must be dismissed because such fail to state a claim on which relief may be granted and, furthermore, because Plaintiff has failed to properly exhaust his administrative remedies.

A.      Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

>requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005),

*cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ W.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, *e.g.,* the regional health administrator for a medical care grievance. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response,

he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

On September 21, 2007, Plaintiff filed grievance ACF-2007-09-0723-03B. (Dkt. #17, Exhibit B at 20-28 of 36). Plaintiff submitted this grievance to protest the "failure of staff" to identify Ausborne as an assaultive prisoner and place him in "a secure area to control such behavior." (Dkt. #17, Exhibit B at 27 of 36). Plaintiff did not identify by name any of the staff members against whom the grievance was asserted. Plaintiff also asserted that the Michigan Department of Corrections and CMS violated prison policy by permitting Ausborne to be housed in "general population." (Dkt. #17, Exhibit B at 27 of 36). Defendants Gelabert and Ouellette concede that Plaintiff pursued this grievance through all three steps of the grievance process, but assert that such fails to exhaust Plaintiff's claims against them because the grievance fails to identify them by name.

Despite Plaintiff's failure to specifically identify any of the staff members against whom his grievance was asserted, prison officials did not reject this grievance on this basis. As previously noted, the failure by a prisoner to comply with the MDOC's procedural rules concerning the filing of grievances supports a motion to dismiss for failure to properly exhaust administrative remedies only if prison officials actually rejected the grievance for failure to comply with the relevant procedural rule.

The Court notes that this is not a circumstance in which a prisoner specifically identified certain individuals by name in a grievance and then later attempted to sue different individuals that were not identified in the grievance. In such a circumstance, dismissal for failure to exhaust (for failure to name the defendants in a grievance) may be appropriate because prison officials would not necessarily have had reason to know that the prisoner had failed to comply with the "identification" requirement. In other words, in such a circumstance prison officials would not necessarily be on notice that the prisoner failed to comply with the relevant procedural rule. The present circumstance, however, is easily distinguishable. Here, Plaintiff failed to identify *any* individual by name in his grievance, instead asserting his grievance against "staff." This certainly put prison officials on notice that Plaintiff failed to comply with the relevant procedural rule. Prison officials could have rejected Plaintiff's grievance for failing to identify by name the "staff" members in question. Prison officials, however, declined to enforce this procedural rule against Plaintiff. Defendants cannot now seek to enforce this procedural rule.

The Court notes that long after filing the aforementioned grievance, Plaintiff submitted a second grievance regarding this matter. In this particular grievance, (ACF-2008-05-0449-28e), Plaintiff purported to amend his previous grievance "for the purpose of listing names or functions of those involved" in the matters giving rise to the initial grievance. (Dkt. #27, Exhibit A at 11 of 15). This grievance was rejected as untimely. Defendants appear to suggest that the rejection of this latter grievance is relevant to whether the initial grievance (discussed above) served to properly exhaust the claims asserted in this action. The Court disagrees. This latter grievance was not filed until several months after prison officials denied Plaintiff's third step appeal of his initial grievance. (Dkt. #17, Exhibit B at 20 of 36; Dkt. #27, Exhibit A at 11 of 15). Thus, despite Plaintiff's assertion that this latter

grievance "is not a new grievance," it was a new grievance and was regarded as such by prison officials. The Court fails to discern the relevance of this latter grievance when examining whether the earlier grievance serves to exhaust the claims asserted in Plaintiff's complaint.

Defendants also assert that "it is important to note that Plaintiff did <u>not</u> file any Step III grievance…regarding medical treatment" by Defendants Gelabert or Ouellette. Plaintiff is not required to have asserted a grievance "regarding medical treatment" because Plaintiff has not asserted a "medical treatment" claim. Plaintiff has instead asserted a "failure to protect" claim under the Eighth Amendment. As discussed above, the Court finds that Plaintiff has properly exhausted this particular claim against Defendants Gelabert and Ouelette. Accordingly, the Court recommends that Defendants' motion to dismiss for failure to exhaust administrative remedies be denied.

B.      Failure to Protect Claim

Plaintiff claims that he was assaulted by Dwight Ausborne on September 18, 2007. Plaintiff further alleges that Defendants failed to protect him from Ausborne, thereby violating his Eighth Amendment rights. Defendants Gelabert and Ouellette move for dismissal of this claim on the ground that such fails to state a claim on which relief may be granted.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, the prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the official deliberately indifferent to the prisoner's health or safety. *Id.*

To prevail on his claim that Defendants failed to protect him, Plaintiff must establish that Defendants were deliberately indifferent to "a substantial risk of serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 828). To establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Plaintiff can make this showing through "inference from circumstantial evidence." *Greene*, 361 F.3d at 294. A prison official "cannot escape liability. . .by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who committed the assault." *Id.* (quoting *Farmer*, 511 U.S. at 842-43). Likewise, "where a specific individual poses a risk to a large class of inmates, that risk can also support a finding of liability even where the particular prisoner at risk is not known in advance." *Greene*, 361 F.3d at 294 (citing *Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir. 2001).

Plaintiff's allegations satisfy this standard and, therefore, state a claim on which relief may be granted. As previously noted, Plaintiff asserts that "Defendants knew prisoner Ausborne #376084 was a clinically diagnosed schizophrenic, and was put on several medications in an attempt to control his violent behavior, because prisoner Ausborne #376084 had numerous prior assault incidents and convictions on record, including the use of a weapon." Plaintiff asserts that the attempts to treat Ausborne were unsuccessful. Depending on the severity of Ausborne's illness, the nature of his history of violence, and the extent of Defendants' knowledge of such, Plaintiff *may* be able to prevail in this matter. Defendants Gelabert and Ouellette may very well be able to present evidence in the future entitling them to summary judgment. At this juncture, however, the Court concludes that it is not "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Defendants Gelabert and Ouellette assert that they are entitled to relief because they did not provide mental health services to Dwight Ausborne and are not responsible for the classification or placement of inmates. The question is not whether Defendants treated Ausborne's mental illness or were involved in determining where he was to be incarcerated. Rather, the question is whether Defendants were aware that Ausborne posed a risk to Plaintiff and failed to take reasonable steps to prevent harm resulting therefrom. While the allegation that Defendants did not treat Ausborne's mental illness or decide where Ausborne would be housed may be relevant to determining whether Gelabert and Ouellette had knowledge of the threat posed by Ausborne, such is hardly a necessary prerequisite to finding that Defendants possessed such knowledge. For example, as previously noted, the investigatory reports attached to Plaintiff's complaint reveal that Defendant Proctor told an investigator that "he is familiar with Ausborne" and "[h]e knows him to be crazy and would hit someone with a rock

for no reason." There is no indication that Proctor treated Ausborne's mental illness or was involved in determining Ausborne's classification or placement. Nevertheless, Proctor apparently recognized the threat Ausborne posed to all the inmates with whom he came into contact.

In sum, for the reasons articulated herein, the Court finds that as to Defendants Gelabert and Ouellette, Plaintiff has stated a claim on which relief may be granted. Accordingly, the Court recommends that Defendant Gelabert's and Ouellette's motion to dismiss be denied.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants Correctional Medical Services, Inc., Raymond Gelabert, M.D., and Margaret Ouellette, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>, (dkt. #17), be **granted in part and denied in part**. Specifically, the Court recommends that Plaintiff's claims against Defendant CMS be dismissed, but that his claims against Defendants Gelabert and Ouellette go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 25, 2009                                     /s/ Ellen S. Carmody
                                                                        ELLEN S. CARMODY
                                                                        United States Magistrate Judge